20 F.3d 480
 305 U.S.App.D.C. 290
 UNITED STATES of America, Appellee,
v.
Ronald Bruce CROSBY, a/k/a Bruce R. Crosby, Appellant.
UNITED STATES of America, Appellee,
v.
Jeffrey W. WILLIAMS, Appellant.
UNITED STATES of America, Appellee,
v.
Bernard WILLIAMS, Appellant.
 Nos. 92-3029, 92-3068 and 92-3239.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Jan. 25, 1993.
Decided April 8, 1994.
Rehearing and Suggestion for Rehearing In Banc
Denied Sept. 15, 1994,*
 
 Appeals from the United States District Court for the District of Columbia (Criminal Nos. 91-559-08 91-559-07 & 91-559-12).
 Sara Kopecki, of the bar of the Supreme Court of Virginia, pro hac vice, by special leave of court, argued the cause, for appellant Crosby. With her on the brief was Jensen E. Barber (appointed by this court).
 Ralph D. Martin (appointed by this court), argued the cause, for appellant Bernard Williams.
 Jonathan Zucker (appointed by this court), argued the cause, for appellant Jeffrey Williams.
 Elizabeth H. Danello, Asst. U.S. Atty., argued the cause, for appellee. With her on the brief were Jay B. Stephens, U.S. Atty. at the time the brief was filed, and John R. Fisher, Roy W. McLeese, III and Russell D. Duncan, Asst. U.S. Attys.
 Before: BUCKLEY, SENTELLE and HENDERSON, Circuit Judges.
 Opinion for the Court filed by Circuit Judge HENDERSON.
 KAREN LeCRAFT HENDERSON, Circuit Judge:
 
 
 1
 In this interlocutory appeal, Ronald Crosby, Jeffrey Williams and Bernard Williams challenge the denial of their motions to dismiss certain counts of an extensive indictment charging twenty-four individuals with numerous drug-related crimes. All three appellants assert the Double Jeopardy Clause of the Fifth Amendment bars their prosecution under Count 1 and Count 2 of the indictment, which charge them with, respectively, a substantive violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. Sec. 1962(c), and engaging in a RICO conspiracy in violation of 18 U.S.C. Sec. 1962(d), because they were previously prosecuted for some or all of the criminal activity alleged in those counts. In addition, appellant Jeffrey Williams raises a similar double jeopardy challenge to Count 4 of the indictment, which charges him with conducting a "Continuing Criminal Enterprise" (CCE) in violation of 21 U.S.C. Sec. 848, and appellant Crosby asserts that Counts 1 and 2 should be dismissed for the additional reason that they violate the terms of earlier plea agreements. For the reasons set out below, we conclude that the district judge correctly rejected the appellants' double jeopardy arguments and that we lack jurisdiction to consider Crosby's interlocutory challenge based on the alleged plea agreement violations.
 
 I.
 
 2
 On October 23, 1991, a superseding indictment (Indictment) was filed, charging 24 individuals with committing crimes in connection with the "R Street Organization," an alleged Washington, D.C. narcotics operation. The indictment identifies Crosby and J. Williams each as a "leader" and B. Williams as a "lieutenant" in the organization. Indictment at 6. This appeal concerns only Counts 1, 2 and 4 of the indictment as they relate to the three appellants.
 
 
 3
 Count 1 and Count 2 of the indictment charge each of the appellants with, respectively, substantive RICO and RICO conspiracy offenses, in violation of 18 U.S.C. Sec. 1962(c) and (d).[1] "Criminal liability under RICO is premised on the commission of a 'pattern of racketeering activity,' defined by the statute as engaging in two or more related predicate acts of racketeering within a 10-year period." Alexander v. United States, --- U.S. ----, ----, 113 S.Ct. 2766, 2777, 125 L.Ed.2d 441 (1993) (Souter, J., concurring) (quoting 18 U.S.C. Sec. 1961(5)). Each of the appellants is charged with a common predicate act, namely conspiring with his 23 co-defendants to possess with intent to distribute cocaine, phencyclidine (PCP), cocaine base, heroin and marijuana between May 1983 and March 26, 1991, in violation of 21 U.S.C. Sec. 846. Indictment at 9-11. In addition, Crosby is charged with three specific predicate acts, each of which has been previously prosecuted;[2] B. Williams is charged with five additional predicate acts, four of which have been previously prosecuted;[3] and J. Williams is charged with 13 specific predicate offenses, only one of which was previously prosecuted.[4] Among the predicates with which B. Williams and J. Williams are charged is possession with intent to distribute 500 grams of cocaine on September 12, 1990, for which each was arrested and indicted in 1990. On January 15, 1991 they were convicted of both conspiracy and substantive possession counts based on that misconduct. Crosby has been incarcerated since February 1989 and both Williamses have been incarcerated since their September 1990 arrests.
 
 
 4
 Count 4 of the indictment charges J. Williams with engaging in a CCE from May 1983 to March 26, 1991, in violation of 21 U.S.C. Sec. 848.[5] "A person has engaged in a CCE under 21 U.S.C. Sec. 848(c) if '(1) [he committed] a predicate offense violating a specified drug law (2) as part of a "continuing series" of drug violations (3) that occurred while [he] was acting in concert with five or more other people (4) to whom [he] occupied the position of an organizer or manager and from which series [he] (5) obtained substantial income or resources.' " United States v. Harris, 959 F.2d 246, 252 (D.C.Cir.) (quoting United States v. Markowski, 772 F.2d 358, 360-61 (7th Cir.1985), cert. denied, 475 U.S. 1018, 106 S.Ct. 1202, 89 L.Ed.2d 316 (1986)) (footnote omitted), cert. denied, Smith v. United States, --- U.S. ----, ----, 113 S.Ct. 362, 364, 121 L.Ed.2d 275 (1992). To satisfy the CCE statute's requirement of "a continuing series of [narcotics] violations," the indictment charges J. Williams with sixteen predicate offenses.[6]
 
 
 5
 Each defendant filed a motion with the district court to dismiss Counts 1 and 2 and J. Williams's motion sought dismissal of Count 4 as well.[7] The appellants' motions offered substantially the same arguments for dismissal that are raised on appeal. Crosby argued that (1) the Double Jeopardy Clause precludes a RICO prosecution based on the three predicate offenses already prosecuted and that the single unprosecuted predicate offense is insufficient by itself to establish a RICO "pattern" and (2) double jeopardy aside, the RICO prosecution violates terms of earlier plea agreements with the Government. B. Williams asserted his RICO prosecution under Counts 1 and 2 constitutes double jeopardy because the misconduct alleged in those counts is equivalent to the conspiracy of which he and J. Williams were convicted in 1991. J. Williams adopted B. Williams's ground for dismissal and argued that it should preclude his prosecution for CCE under Count 4 as well. The district court rejected each defendant's challenge by written order.[8] Each defendant then filed an interlocutory appeal challenging the court's denial of his motion. We affirm the trial court's disposition of those motions.
 
 II.
 
 6
 The Double Jeopardy Clause states: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The double jeopardy guarantee "has been said to consist of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969) (footnotes omitted). To claim benefit of the guarantee, "a defendant must show that the two offenses charged are in law and fact the same offense." United States v. Benefield, 874 F.2d 1503, 1505 (11th Cir.1989). Our disposition of the double jeopardy challenges here is governed by the Supreme Court's opinion in Garrett v. United States, 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985).
 
 
 7
 In Garrett, the Supreme Court considered a defendant's claim that his prosecution for CCE in the Northern District of Florida, after an earlier guilty plea in the Western District of Washington to one of the alleged CCE predicates (marijuana smuggling), constituted double jeopardy. The Supreme Court analyzed the double jeopardy claim in two steps. First, the Court inquired whether Congress intended CCE to be a separate offense that may be prosecuted separately from its predicates and, having concluded that it did, next considered whether the successive prosecutions of the predicate and of the CCE offenses were constitutional under the Double Jeopardy Clause and held that they were. We undertake the same analysis, and reach the same conclusions, here.
 
 
 8
 The Supreme Court's decision in Garrett conclusively established that Congress intended CCE to be a separate offense from its predicate acts based on the language and history of the CCE statute. See 471 U.S. at 778-86, 105 S.Ct. at 2411-15. We find the statutory language and legislative history of RICO dictate a similar conclusion.[9] First, RICO itself defines "pattern of racketeering activity" to include "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment ) after the commission of a prior act of racketeering activity." 18 U.S.C. Sec. 1961(5) (emphasis added). The highlighted statutory language at least suggests that Congress expressly contemplated that a RICO defendant might be incarcerated for one or more of the predicate offenses before being prosecuted for the RICO violation. Further, Congress's "Statement of Findings and Purpose" reinforces this intent, indicating that RICO was enacted to supplement rather than replace the existing predicate crimes and penalties. See Organized Crime Control Act of 1970, Pub.L. No. 91-452, 84 Stat. 922, 923, reprinted in 1970 U.S.C.C.A.N. 1073. ("It is the purpose of this Act to seek the eradication of organized crime in the United States by strengthening the legal tools in the evidence-gathering process, by establishing new penal prohibitions, and by providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime."). Accordingly, we hold, as have other circuits, that Congress intended that a RICO violation be a discrete offense that can be prosecuted separately from its underlying predicate offenses. Accord United States v. Persico, 774 F.2d 30, 32 (2d Cir.1985); United States v. Pungitore, 910 F.2d 1084, 1107-11 (3d Cir.1990), cert. denied, 500 U.S. 915, 111 S.Ct. 2009, 114 L.Ed.2d 98 (1991); United States v. Arnoldt, 947 F.2d 1120, 1125-27 (4th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1666, 118 L.Ed.2d 387 (1992); United States v. Deshaw, 974 F.2d 667, 671-73 (5th Cir.1992); United States v. Licavoli, 725 F.2d 1040, 1047 (6th Cir.), cert. denied, 467 U.S. 1252, 104 S.Ct. 3535, 82 L.Ed.2d 840 (1984); United States v. O'Connor, 953 F.2d 338, 339-43 (7th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 1979, 118 L.Ed.2d 578 (1992); United States v. Gonzalez, 921 F.2d 1530, 1535-36 (11th Cir.1991), cert. denied, --- U.S. ----, ----, 112 S.Ct. 96, 178, 116 L.Ed.2d 68, 140 (1991); cf. United States v. Greenleaf, 692 F.2d 182, 189 (1st Cir.1982) (holding double jeopardy does not bar consecutive sentences for RICO and predicate offenses in single proceeding), cert. denied, 460 U.S. 1069, 103 S.Ct. 1522, 1523, 75 L.Ed.2d 946 (1983); United States v. Johnson, 911 F.2d 1394, 1397-98 (10th Cir.1990) (same), cert. denied, 498 U.S. 1050, 111 S.Ct. 761, 112 L.Ed.2d 781 (1991).
 
 
 9
 Having concluded that Congress intended both CCE and RICO violations to be separate offenses from their predicates, we must next inquire whether the appellants' prosecution for such violations under the particular facts here offends the Double Jeopardy Clause. We hold that it does not.
 
 
 10
 In Garrett the Court observed that in addressing the constitutionality issue "[t]he critical inquiry is whether a CCE offense is considered the 'same offense' as one or more of its predicate offenses within the meaning of the Double Jeopardy Clause." 471 U.S. at 786, 105 S.Ct. at 2415. While noting that as a general matter "[q]uite obviously the CCE offense is not, in any commonsense or literal meaning of the term, the 'same' offense as one of the predicate offenses," the Court nevertheless determined that "[i]n order to properly analyze the successive prosecution issue, we must examine not only the statute which Congress has enacted, but also the charges which form the basis of the Government's prosecution here." Id. The Court then conducted precisely such an examination and determined the predicate offenses at issue were not "the same offense" as CCE because "the continuing criminal enterprise was alleged to have spanned more than five years" while "the acts charged in the [earlier] indictment were alleged to have occurred on single days in 1979 and 1980, respectively." In reaching this conclusion, the Garrett Court distinguished the situation before it from the one it had previously addressed in Brown v. Ohio, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977).
 
 
 11
 In Brown, the Court held that the guarantee against double jeopardy barred prosecution of a defendant for the felony of auto theft after an earlier prosecution, arising out of the same conduct, for misdemeanor joyriding because the latter was a "lesser included offense" of the former. The Garrett Court found "a good deal of difference between the classic relation of the 'lesser included offense' to the greater offense presented in Brown, on the one hand, and the relationship between the Washington marihuana offense and the CCE charge involved in this case, on the other." 471 U.S. at 787, 105 S.Ct. at 2416. The Court explained:
 
 
 12
 The defendant in Brown had stolen an automobile and driven it for several days. He had engaged in a single course of conduct--driving a stolen car. The very same conduct would support a misdemeanor prosecution for joyriding or a felony prosecution for auto theft, depending only on the defendant's state of mind while he engaged in the conduct in question. Every moment of his conduct was as relevant to the joyriding charge as it was to the auto theft charge.
 
 
 13
 471 U.S. at 787, 105 S.Ct. at 2416. Garrett, however, presented a different situation:
 
 
 14
 Obviously the conduct in which Garrett was charged with engaging in the Florida indictment, when compared with that with which he was charged in the Washington indictment, does not lend itself to the simple analogy of a single course of conduct--stealing a car--comprising a lesser included misdemeanor within a felony. Here the continuing criminal enterprise was alleged to have spanned more than five years; the acts charged in the Washington indictment were alleged to have occurred on single days in 1979 and 1980, respectively. Whenever it was during the 5 1/2-year period alleged in the indictment that Garrett committed the first of the three predicate offenses required to form the basis for a CCE prosecution, it could not then have been said with any certainty that he would necessarily go ahead and commit the other violations required to render him liable on a CCE charge. Every minute that Nathaniel Brown drove or possessed the stolen automobile he was simultaneously committing both the lesser included misdemeanor and the greater felony, but the same simply is not true of Garrett. His various boatload smuggling operations in Louisiana, for example, obviously involved incidents of conduct wholly separate from his "mother boat" operations in Washington. These significant differences caution against ready transposition of the "lesser included offense" principles of double jeopardy from the classically simple situation presented in Brown to the multilayered conduct, both as to time and to place, involved in this case.
 
 
 15
 471 U.S. at 788-89, 105 S.Ct. at 2416-17. Heeding the Supreme Court's caution, we conclude the appellants' earlier prosecutions for single predicate acts, whatever their double jeopardy effect might be on subsequent prosecutions for overlapping simple offenses or even for section 846 conspiracy,[10] present no bar to the present prosecution under Counts 1, 2 and 4. As the Court made clear in Garrett, multi-layered conduct offenses, such as CCE and RICO violations, are generically distinct in the double jeopardy arena.
 
 
 16
 As in Garrett the course of criminal conduct underlying each challenged count here, whether RICO or CCE, encompasses multiple offenses over a period of years,[11] while each previous prosecution involved but a single, discrete step in the ongoing illegal activity. Thus, in light of Garrett 's holding and rationale, we see no reason why the earlier prosecutions of those limited offenses should bar the present prosecution of the overall, cumulative activity that Congress intended to establish as a separate offense. In reaching this conclusion we recognize that the present case differs somewhat from the situation in Garrett, but do not believe it does so materially.
 
 
 17
 First, we find it irrelevant that one of the predicates with which B. Williams and J. Williams are charged was prosecuted in 1990-91 as a "conspiracy" as well as a substantive offense. This court has already held that a section 846 conspiracy is a permissible predicate act to support a CCE conviction under section 848. United States v. Harris, 959 F.2d 246, 253-54 (D.C.Cir.1992). The conspiracy alleged in the 1990 indictment, which was limited to the single purported object of possessing with intent to distribute a specific, albeit large, amount of cocaine on a specific date,[12] cannot be equated with the complex, extensive criminal enterprise charged in Counts 1, 2 and 4 of the present indictment. Further, given the interlocutory, pre-sentence (indeed pre-trial) posture of this appeal, we are not confronted with the constitutionality of imposing cumulative penalties for the conspiracy and CCE convictions. See Garrett, 471 U.S. at 794, 105 S.Ct. at 2419 (noting that in Jeffers v. United States, 432 U.S. 137, 156-157, 97 S.Ct. 2207, 2219, 53 L.Ed.2d 168 (1977), a plurality of the Court had "reasonably concluded that the dangers posed by a conspiracy and a CCE were similar and thus there would be little purpose in cumulating the penalties").
 
 
 18
 Nor do we find it dispositive that, unlike Garrett, here there is no allegation that the appellants committed, or in light of their incarceration could have committed, any criminal act since their last predicate prosecution. The appellants rely heavily on this distinction, pointing to Justice O'Connor's statement in her separate concurrence in Garrett that
 
 
 19
 we do not decide in this case whether a defendant would have a valid double jeopardy claim if the Government failed in a later prosecution to allege and to present evidence of a continuing violation of Sec. 848 after an earlier conviction for a predicate offense. Certainly the defendant's interest in finality would be more compelling where there is no indication of continuing wrongdoing after the first prosecution.
 
 
 20
 471 U.S. at 799, 105 S.Ct. at 2422. Justice O'Connor's concurrence emphasized, however, that "[d]ecisions by this Court have consistently recognized that the finality guaranteed by the Double Jeopardy Clause is not absolute, but instead must accommodate the societal interest in prosecuting and convicting those who violate the law" and that "the compelling public interest in punishing crimes can outweigh the interest of the defendant in having his culpability conclusively resolved in one proceeding." Id. at 796, 105 S.Ct. at 2420. In particular, Justice O'Connor observed: "The decision to bring charges under Sec. 848 [for CCE] ... will necessarily and appropriately depend on prosecutorial judgments concerning the adequacy of the evidence, the efficient allocation of enforcement resources, and the desirability of seeking the statute's severe sanctions. These considerations may be affected by events occurring after the last necessary predicate offense." While she identified as one example of such subsequent events that "the defendant continues unlawful conduct after the time the Government prosecutes him for a predicate offense," we do not believe that is the only relevant circumstance. Here, for example, the indictment charges that the far-reaching and lengthy drug distribution scheme, in which the appellants are alleged to have participated for so long, in fact lasted until March 26, 1991, with or without the appellants' continued participation. We do not think it unreasonable under the circumstances to permit the Government latitude to postpone prosecution of conspiracy-wide charges, such as CCE and RICO, until the conspiracy has terminated, the conspirators' particular roles can be more readily identified and the conspirators can all be indicted simultaneously.[13]
 
 
 21
 For the foregoing reasons, we conclude that the appellants' double jeopardy challenges to Counts 1, 2 and 4 must be rejected under Garrett.[14]
 
 III.
 
 22
 It remains to address appellant Crosby's claim that the pending RICO prosecution violates the terms of two earlier plea agreements. This court's appellate jurisdiction is limited by statute to "final decisions." 28 U.S.C. Sec. 1291. "In criminal cases, this prohibits appellate review until after conviction and imposition of sentence." Midland Asphalt Corp. v. United States, 489 U.S. 794, 798, 109 S.Ct. 1494, 1497, 103 L.Ed.2d 879 (1989). Nevertheless, the Supreme Court has carved out "a narrow exception to the normal application of the final judgment rule" in the collateral order doctrine, which "considers as 'final judgments,' even though they do not 'end the litigation on the merits,' decisions 'which finally determine claims of right separate from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate jurisdiction be deferred until the whole case is adjudicated.' " Id. (quoting Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 1226, 93 L.Ed. 1528 (1949)). In criminal cases, this exception has been interpreted "with the utmost strictness" to permit interlocutory review of denials of only three kinds of orders: motions to reduce bail, motions to dismiss based on double jeopardy and motions to dismiss under the Speech or Debate Clause. Id. (citing Stack v. Boyle, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951) (excessive bail); Abney v. United States, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977) (double jeopardy); Helstoski v. Meanor, 442 U.S. 500, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979) (Speech or Debate Clause)). Because Crosby's plea agreement violation claim does not fall within any of these three categories, we conclude that we are without jurisdiction to review that part of his motion. Cf. United States v. Brizendine, 659 F.2d 215, 216-17 (D.C.Cir.1981) (no interlocutory appeal of denial of motion to dismiss based on claim of retaliatory prosecution for refusal to enter plea); see also United States v. Hollywood Motor Car Co., 458 U.S. 263, 102 S.Ct. 3081, 73 L.Ed.2d 754 (1982) (no interlocutory appeal of denial of motion to dismiss for vindictive prosecution); United States v. MacDonald, 435 U.S. 850, 860, 98 S.Ct. 1547, 1553, 56 L.Ed.2d 18 (1978) (no interlocutory appeal of denial of motion to dismiss for violation of Sixth Amendment speedy trial right).
 
 
 23
 For the foregoing reasons, the district court's orders denying the appellants' motions to dismiss Counts 1, 2 and 4 are
 
 
 24
 Affirmed.
 
 
 
 *
 Mikva, Chief Judge, did not participate in this matter
 
 
 [1]
 These subsections provide:
 (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
 (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.
 18 U.S.C. Sec. 1962(c)-(d).
 
 
 [2]
 These are (1) possessing with intent to distribute marijuana on November 2, 1983, Indictment at 12 (reduced plea of simple marijuana possession); (2) distributing PCP on July 24, 1987, id. at 26 (reduced plea to possessing sawed-off shotgun); and (3) possessing with intent to distribute PCP on July 25, 1987, id. at 27 (same reduced plea)
 
 
 [3]
 These are (1) possessing with intent to distribute cocaine on May 20, 1985, Indictment 17-18 (juvenile adjudication); (2) possessing with intent to distribute PCP on May 30, 1985, id. at 19 (juvenile adjudication); (3) distributing PCP and marijuana on December 2, 1986, id. at 23-24 (adult conviction); (4) possessing with intent to distribute PCP and marijuana on January 28, 1988, id. at 30 (not previously adjudicated); and (5) possessing (along with J. Williams) with intent to distribute more than 500 grams of cocaine on September 12, 1990, id. at 58 (convicted of conspiring to possess and possessing with intent to distribute cocaine on January 15, 1991)
 
 
 [4]
 These are (1) possessing with intent to distribute cocaine, PCP and marijuana on January 24, 1985, Indictment at 14-15; (2) assault with intent to kill and first degree murder on April 3, 1985, id. at 15-16; (3) possessing with intent to distribute cocaine on May 13, 1986, id. at 21; (4) possessing with intent to distribute PCP and marijuana on August 13, 1987, id. at 27-28; (5) possessing with intent to distribute PCP and marijuana on March 17, 1988, id. at 32-33; (6) possessing with intent to distribute PCP and marijuana on March 24, 1988, id. at 33-34; (7) possessing with intent to distribute and distributing PCP and marijuana on March 26, 1988, id. at 34-35; (8) distributing PCP from April 1988 to May 1989, id. at 36; (9) laundering drug proceeds from May 30, 1988 to November 1989, id. at 39-40; (10) armed robbery of and possessing with intent to distribute cocaine in March or April 1990, id. at 53; (11) laundering drug proceeds in Spring 1990, id. at 54; (12) possessing with intent to distribute cocaine and heroin on June 15, 1990, id. at 55-56; and (13) possessing with intent to distribute cocaine on September 12, 1990, id. at 58
 
 
 [5]
 This section provides for enhanced penalties, ranging from a 20-year minimum to life imprisonment, and in some cases the death penalty, for persons engaging in a CCE. The statute states that
 a person is engaged in a continuing criminal enterprise if--
 (1) he violates any provision of this subchapter or subchapter II of this chapter the punishment for which is a felony, and
 (2) such violation is a part of a continuing series of violations of this subchapter or subchapter II of this chapter--
 (A) which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and
 (B) from which such person obtains substantial income or resources.
 21 U.S.C. Sec. 848(c).
 
 
 [6]
 These are for the most part the 1987-1990 drug offenses alleged as predicates for the RICO charges, see supra note 4, but also include charges of inducing minors to engage in unlawful drug activity (Count 18) and using a telephone to facilitate cocaine and heroin distribution (Count 73)
 
 
 [7]
 The Williamses sought dismissal of Count 3 as well. As noted infra note 10, that challenge is not now before us
 
 
 [8]
 See United States v. Crosby, 789 F.Supp. 440, 443-45 (D.D.C.1992); United States v. (Jeffrey) Williams, No. 91-559-07, 1992 WL 44318 (D.D.C. Feb. 13, 1992); United States v. (Bernard) Williams, No. 91-559-07 (D.D.C. Oct. 14, 1992)
 
 
 [9]
 In so concluding, we, like the Garrett Court, decline to apply here the so called "Blockburger " test ("[T]he test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932)). As the Court observed in Garrett: "The rule stated in Blockburger was applied as a rule of statutory construction to help determine legislative intent" and "is not controlling when the legislative intent is clear from the face of the statute or the legislative history." 471 U.S. at 778-79, 105 S.Ct. at 2411 (citing Missouri v. Hunter, 459 U.S. 359, 368, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983); Albernaz v. United States, 450 U.S. 333, 340, 101 S.Ct. 1137, 1143, 67 L.Ed.2d 275 (1981); Whalen v. United States, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980))
 
 
 [10]
 Appellants B. Williams and J. Williams also raised a double jeopardy challenge to their section 846 conspiracy indictments under Count 3, which charges each of them with conspiring between May 1983 and March 26, 1991 to distribute cocaine, PCP, cocaine base, heroin and marijuana. We do not address that challenge, however, because the Government agrees that Count 3 should be dismissed as it relates to these two appellants. See Brief for Appellee at 32-33. Appellant Crosby does not challenge Count 3 of the indictment
 
 
 [11]
 The indictment charges the defendants with conspiring from 1983 until 1991. The predicate acts alleged ran from 1983 until 1989 for Crosby, see supra note 2, and from 1985 until 1990 for the two Williamses, see supra notes 3, 4
 
 
 [12]
 Count 11 of the 1990 indictment charged:
 On or about September 12, 1990, within the District of Columbia, BERNARD WILLIAMS and JEFFREY WILLIAMS, did unlawfully, knowingly and intentionally conspire, confederate, and agree together and with other persons known and unknown to the Grand Jury, to unlawfully, knowingly and intentionally possess with intent to distribute more than 500 grams of a substance or mixture containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a).
 1990 Indictment at 6-7 (reprinted in Jeffrey Williams' "Exerpt [sic] of Record").
 
 
 [13]
 The Seventh Circuit has similarly concluded that the absence of criminal activity since the last prosecution is not dispositive of double jeopardy. See United States v. O'Connor, 953 F.2d 338, 343-45 (7th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 1979, 118 L.Ed.2d 578 (1992)
 
 
 [14]
 When this appeal was briefed and argued, the continuing validity of Garrett was called into question on account of the Supreme Court's intervening holding in Grady v. Corbin, 495 U.S. 508, 510, 110 S.Ct. 2084, 2087, 109 L.Ed.2d 548 (1990), that "the Double Jeopardy Clause bars a subsequent prosecution if, to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted." Since that time, however, the Supreme Court has expressly overruled Grady 's "same-conduct" double jeopardy test. See United States v. Dixon, --- U.S. ----, ----, 113 S.Ct. 2849, 2864, 125 L.Ed.2d 556 (1993)