# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number:** _____

**Filing Date: August 23, 2018**

**NO. S-1-SC-35391**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**MATIAS LOZA,**

Defendant-Appellant.

**INTERLOCUTORY APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Angie K. Schneider, District Judge**

L. Helen Bennett, P.C.
Linda Helen Bennett
Albuquerque, NM

for Appellant

Hector H. Balderas, Attorney General
Charles J. Gutierrez, Assistant Attorney General
Santa Fe, NM

for Appellee

**OPINION**

**VIGIL, Justice.**

{1}     In this case, we consider whether a defendant's racketeering convictions foreclose a subsequent prosecution for the crimes alleged as the predicate offenses in the earlier racketeering case. Matias Loza (Defendant) was previously convicted of racketeering, contrary to NMSA 1978, Section 30-42-4 (C) (2002, amended 2015), and conspiracy to commit racketeering, contrary to Section 30-42-4(D), for conduct that he engaged in as part of a criminal enterprise referred to as the AZ Boys. *State v. Loza*, 2016-NMCA-088, ¶¶ 1-2, 382 P.3d 963. In support of the racketeering charges, the State alleged the underlying predicate offenses of murder, arson, and bribery of a public officer. *See* NMSA 1978, § 30-42-3(A)(1), (A)(9), (A)(14), (D) (2009) (defining "'pattern of racketeering activity'" as "engaging in at least two incidents of racketeering," which may include murder, arson, or bribery, among other offenses). The State now seeks to prosecute Defendant for the crimes alleged as the predicate offenses in the earlier prosecution—murder, arson, and bribery—as well as other related charges. Defendant contends that the constitutional proscription against double jeopardy as set forth in the Fifth Amendment to the United States Constitution and Article II, Section 15 of the New Mexico Constitution forecloses this subsequent prosecution. We conclude otherwise and therefore affirm the district court's denial

of Defendant's motion to dismiss.

## I.     BACKGROUND

{2}     On November 1, 2011, officers discovered Defendant smelling strongly of gasoline and cowering under a fifth-wheel trailer. One hundred yards away, a Suzuki automobile containing the human remains of Richard Valdez was fully engulfed in flames. Shoe prints in the area were consistent with the shoes Defendant was wearing. After claiming that he had been brought to the area by a truck, which he had just escaped after being shot at by its occupants, Defendant offered one of the officers $40,000 to let him go free. Following a more extensive investigation into Defendant's background and his reasons for being so near the murder scene, detectives ascertained that Defendant was connected with the AZ Boys gang, and gathered further intelligence from anonymous sources that Defendant had in fact served as a hitman and had killed Valdez in connection with the gang's drug trafficking activity.

{3}     The State filed a series of indictments and nolle prosequis ultimately resulting in two separate cases against Defendant. In Case No. D-1215-CR-2012-00320 (racketeering case), Defendant was charged with and convicted of racketeering and conspiracy to commit racketeering for conduct spanning from November 1, 2007, to May 15, 2012, based on at least two of the three predicate offenses of first-degree

murder, arson, and bribery of a public officer. *See generally* NMSA 1978, §§ 30-42-1 to -6 (1980, as amended through 2015) (Racketeering Act). In Case No. D-1215-CR-2014-00063 (murder case), Defendant was charged with the same crimes that served as the predicate offenses in the racketeering case—first-degree murder, arson, and bribery of a public officer—as well as conspiracy to commit first-degree murder and two counts of tampering with evidence. In this interlocutory appeal, arising from the murder case, Defendant argues that his convictions in the racketeering case foreclose the possibility of convictions in this case because the subsequent prosecution violates his right to be free from double jeopardy.

## II.      STANDARD OF REVIEW

{4}      This Court reviews claims involving alleged violations of a defendant's right to be free from double jeopardy de novo. *State v. Swick*, 2012-NMSC-018, ¶ 10, 279 P.3d 747 ("A double jeopardy challenge is a constitutional question of law which we review de novo.").

## III.     DISCUSSION

## A.      Federal Double Jeopardy Authority in Racketeering Cases

{5}      Both the United States Constitution and the New Mexico Constitution protect against double jeopardy for the same offense. U.S. Const. amend. V ("No person shall

. . . be subject for the same offense to be twice put in jeopardy of life or limb."); N.M. Const. art. II, § 15 ("[N]or shall any person be twice put in jeopardy for the same offense."). The right to be free from double jeopardy protects a criminal defendant from being retried for the same offense after either acquittal or conviction (successive prosecutions) and from being punished twice for the same offense (multiple punishments). *State v. Lynch*, 2003-NMSC-020, ¶ 9, 134 N.M. 139, 74 P.3d 73. In a case like this, "[w]here successive prosecutions are at stake, the guarantee serves a constitutional policy of finality for the defendant's benefit. That policy protects the accused from attempts to relitigate the facts underlying a prior acquittal, and from attempts to secure additional punishment after a prior conviction and sentence." *State v. Rodriguez*, 2005-NMSC-019, ¶ 6, 138 N.M. 21, 116 P.3d 92 (quoting *Brown v. Ohio*, 432 U.S. 161, 165-66 (1977)). However, "the finality guaranteed by the Double Jeopardy Clause is not absolute, but instead must accommodate the societal interest in prosecuting and convicting those who violate the law." *Garrett v. United States*, 471 U.S. 773, 796 (1985) (O'Connor, J., concurring).

{6}     In addition to other elements, a successful racketeering prosecution requires proof beyond a reasonable doubt of at least two predicate offenses, which are often prosecuted in a proceeding separate from the substantive racketeering offense. 1

4

David R. McCormack, *RICO: Racketeer Influenced Corrupt Organizations*, at 6.15 (1988). As a result, double jeopardy challenges are common in racketeering cases. Seemingly without exception, however, courts have been unreceptive to these challenges. *See id.* at 6.16 (collecting cases). "Federal courts have uniformly held that a defendant may be convicted separately and sentenced cumulatively for engaging in [racketeering] and for committing the crimes alleged as the predicates for the [racketeering] charge." Jed S. Rakoff & Howard W. Goldstein, *RICO Civil and Criminal Law and Strategy*, at § 10.04[2] (1989).

{7}    Although the parties agree that this case involves a successive prosecution for double jeopardy purposes, they disagree on the appropriate analysis to apply. The State contends that the United States Supreme Court's decision in *Garrett* and cases interpreting it articulate the appropriate framework for analyzing the double jeopardy issue in this case. Defendant's arguments, on the other hand, are premised on jurisprudence relevant to the analysis of multiple punishments for the same offense for purposes of double jeopardy. Specifically, Defendant argues that this Court should apply the analysis set forth in *Swafford v. State*, 1991-NMSC-043, 112 N.M. 3, 810 P.2d 1223—a multiple punishment case. As this is not a multiple punishment case, *Swafford* is inapplicable. Recognizing the uniquely complex nature of racketeering

offenses, we agree with the State that *Garrett* and its progeny set forth the appropriate framework for deciding double jeopardy issues under the federal constitution in the context of complex statutory schemes involving "multilayered conduct," such as the Racketeering Act.

{8}    In *Garrett*, the Supreme Court "caution[ed] against ready transposition" of double jeopardy principles articulated in cases involving a single course of conduct to the "multilayered conduct" that comprises criminal activity in complex statutory schemes. 471 U.S. at 789. In other words, traditional double jeopardy principles do not lend themselves well to issues arising in the context of a statutory scheme that requires proof of other violations of law through the use of various predicate offenses. *See United States v. Esposito*, 912 F.2d 60, 62 (3rd Cir. 1990) ("The double jeopardy issues raised in connection with prosecution for a compound predicate offense, such as racketeering under [the Racketeer Influenced and Corrupt Organizations Act] or engaging in a continuing criminal enterprise (CCE) in violation of the Comprehensive Drug Abuse Prevention and Control Act of 1970 do not fit precisely within the analytic lines used in other double jeopardy cases." (citation omitted)). Accordingly, the *Garrett* Court declined to strictly apply the same-elements test articulated in *Blockburger v. United States*, 284 U.S. 299, 304 (1932), or the lesser-included-

offense framework articulated in *Brown*, 432 U.S. at 167-69, to the double jeopardy issue presented in that case. *Garrett*, 471 U.S. at 779, 787-90.

{9}     At issue in *Garrett* was whether the defendant's earlier conviction for narcotics importation could be used as a predicate offense in a subsequent CCE prosecution without offending his right against double jeopardy. 471 U.S. at 775-77. In considering the issue, the Supreme Court instructed:

> Where the same conduct violates two statutory provisions, the first step in the double jeopardy analysis is to determine whether the legislature—in this case Congress—intended that each violation be a separate offense. If Congress intended that there be only one offense—that is, a defendant could be convicted under either statutory provision for a single act, but not under both—there would be no statutory authorization for a subsequent prosecution after conviction of one of the two provisions, and that would end the double jeopardy analysis.

*Id.* at 778. Analyzing the language, structure, and legislative history of the Comprehensive Drug Abuse Prevention and Control Act of 1970, the Court concluded that Congress intended CCE to be a distinct offense, punishable in addition to, not in lieu of, any predicate offenses. *Id.* at 779-86. Next, the Court examined whether CCE is the "same offense" as one or more of its predicates for double jeopardy purposes. *Id.* at 786.

> Quite obviously the CCE offense is not, in any commonsense or literal meaning of the term, the "same" offense as one of the predicate offenses.

7

The CCE offense requires the jury to find that the defendant committed a predicate offense, and in addition that the predicate offense was part of a continuing series of predicate offenses undertaken by the defendant in concert with five or more other persons, that the defendant occupied the position of an organizer or manager, and that the defendant obtained substantial income or resources from the continuing series of violations.

*Id.* The Court then addressed the defendant's argument that the importation charge was a lesser-included offense of CCE under *Brown*—a case holding that a prior conviction for the lesser included offense of joyriding prohibited a subsequent prosecution for the greater offense of auto theft. *Garrett*, 471 U.S. at 787-88; *see also Brown*, 432 U.S. at 167-69. The Court explained that the conduct that the defendant was charged with "does not lend itself to the simple analogy of a single course of conduct . . . comprising a lesser included misdemeanor within a felony." *Garrett*, 471 U.S. at 788. Distinguishing *Brown*, the *Garrett* Court explained that in that case, "[e]very minute that [the defendant] drove or possessed the stolen automobile he was simultaneously committing both the lesser included misdemeanor and the greater felony." *Id.* at 788-89. On the other hand, the defendant in *Garrett* was involved in conduct that spanned a five and one-half year period. *Id.* at 788. Thus, lesser-included offenses arise from the same act or transaction as the greater-included offense, whereas a CCE and the underlying predicate offenses do not. A single course of conduct can constitute a standalone criminal offense, which may—at some point in

8

the future, possibly years later—serve as a predicate offense for a CCE prosecution. *See id.* at 788-89. Because of this difference between lesser-included offenses and a CCE offense, the *Garrett* Court rejected the defendant's argument that the importation charge and CCE were the "same offense" for purposes of double jeopardy. *Id.* at 786-90.

{10}     Although *Garrett* addressed double jeopardy issues raised in connection with CCE rather than racketeering, because both crimes are structured to require proof of underlying predicate offenses in order to prove the substantive offense, *Garrett* has been interpreted to apply to double jeopardy challenges under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-68 (2012). *See, e.g.*, *United States v. Cole*, 293 F.3d 153, 160-62 (4th Cir. 2002); *United States v. Crosby*, 20 F.3d 480, 483-87 (D.C. Cir. 1994); *United States v. Deshaw*, 974 F.2d 667, 671-73 (5th Cir. 1992); *United States v. O'Connor*, 953 F.2d 338, 340-41 (7th Cir. 1992); *United States v. Persico*, 620 F. Supp. 836, 840-46 (S.D.N.Y. 1985). *See also* William Jue, *The Continuing Financial Crimes Enterprise and Its Predicate Offenses: A Prosecutor's Two Bites at the Apple*, 27 Pac. L.J. 1289, 1308 (1996) ("*Garrett v. United States* is the leading United States Supreme Court case dealing with the relationship between a modern compound statute such as . . . RICO . . . and

its predicates in a relevant double jeopardy context." (footnotes omitted)). Application of *Garrett* has resulted in a general consensus that a defendant can be prosecuted and sentenced separately for committing the underlying predicate offenses as well as the racketeering offenses themselves without offending double jeopardy rights. *See* Anne Bowen Poulin, *Double Jeopardy Prosecutions Against Successive Protections in Complex Criminal Cases: A Model*, 25 Conn. L. Rev. 95, 140-41 & n.205 (1992) (noting that "in no case has a court concluded that double jeopardy forecloses separate prosecution" of compound-complex offenses, like RICO, and their predicates, and citing cases relying on *Garrett*). As one example, in a case similar to the one presently before this Court, the Third Circuit held that a subsequent prosecution for narcotics offenses, which had previously served as the predicate acts for a RICO prosecution, was not barred by double jeopardy protections. *Esposito*, 912 F.2d at 65. The court acknowledged that the case was different from *Garrett* because of the order in which the charges were prosecuted—*i.e.*, racketeering before predicate offenses. *See Esposito*, 912 F.2d at 62 ("[T]his is not a case where all the events necessary to the second prosecution had not taken place at the time of the first prosecution." (citing *Garrett*, 471 U.S. at 798 (O'Connor, J., concurring))). Nonetheless, the dispositive inquiry was whether the defendant had been charged

with the "same offense" in both proceedings. *Id.* at 63. Then, applying the *Garrett* framework, the court concluded relative to the first step, that the "broad purpose behind [RICO] supports allowing two prosecutions, irrespective of the order in which they are brought." *Esposito*, 912 F.2d at 64; *see also United States v. Smith*, 963 F.2d 892, 893-94 (6th Cir. 1992) (holding that prosecution for narcotics charge was not barred by double jeopardy, despite the use of the same charge as a predicate act in previous CCE case); *United States v. Lequire*, 931 F.2d 1539, 1539-40 (11th Cir. 1991) (per curiam) (concluding that prosecution for dynamiting radio towers was not barred by double jeopardy, even when the same offense served as a predicate offense in an earlier RICO prosecution). And, relative to the second part of the inquiry—whether the defendant was charged with the "same offense" in both proceedings—the court analogized to conspiracies, reasoning that if collective criminal agreements that constitute conspiracies are not the same as the substantive offense for purposes of double jeopardy, then "the even more complex conduct needed to support a RICO charge . . . constitutes an offense different than and separate from that encompassed by" predicate offenses, even if those offenses are used to prove racketeering. *Esposito*, 912 F.2d at 65-67.

{11}     *Garrett* and its progeny leave no doubt that this area of law is, as the State

points out, "entirely settled against Defendant." *See* Rakoff & Goldstein, *supra*, at § 10.04[2] ("Federal courts have uniformly held that a defendant may be convicted separately and sentenced cumulatively for engaging in [racketeering] and for committing the crimes alleged as the predicates for the [racketeering] charge."); 1 McCormack, *supra*, at 6.16 ("In general, the courts have found no double jeopardy problems involved in successive federal prosecutions for predicate offenses and RICO violations.").

**B.      Application of Federal Authority to Successive Prosecutions for New Mexico Racketeering Offenses and Underlying Predicates**

{12}      Under *Garrett*, we first consider whether the Legislature intended for offenses under the Racketeering Act to be separate offenses from their predicates. *See* 471 U.S. at 778. The Racketeering Act was modeled after RICO, the federal statute criminalizing racketeering, and accordingly we look to federal cases interpreting RICO for guidance in interpreting our Act. *State v. Hughes*, 1988-NMCA-108, ¶ 19, 108 N.M. 143, 767 P.2d 382; *State v. Johnson*, 1986-NMCA-084, ¶ 23, 105 N.M. 63, 728 P.2d 473. Consistent with *Garrett* and *Esposito*, federal courts interpreting RICO have concluded that the language of the act leaves "little doubt that Congress . . . sought to allow the separate prosecution and punishment of predicate offenses and a subsequent RICO offense." *United States v. Grayson*, 795 F.2d 278, 282 (3rd Cir.

12

1986). RICO's definition of "pattern of racketeering," while differing slightly, is consistent with the way that the Racketeering Act defines the term. *Compare* 18 U.S.C. § 1961(5) ("'[P]attern of racketeering activity' requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity."), *with* Section 30-42-3(D) ("'[P]attern of racketeering activity' means engaging in at least two incidents of racketeering . . . provided at least one of the incidents occurred after February 28, 1980 and the last incident occurred within five years after the commission of a prior incident of racketeering."). The language of the definitions suggests that a defendant could be convicted and sentenced for a racketeering act—*i.e.*, a predicate offense—and years later, be charged with a racketeering offense based on that prior conviction. *Grayson*, 795 F.2d at 282; *accord Persico*, 620 F. Supp. at 841. "[N]othing in the legislative history suggests that Congress intended RICO to be a substitute for the predicate offense." *Esposito*, 912 F.2d at 63. Instead, it is clear that "Congress sought to supplement, rather than supplant, existing crimes and penalties." *Grayson*, 795 F.2d at 282; *Crosby*, 20 F.3d at 484; *cf. Garrett*, 471 U.S. at 784 ("Nowhere in the legislative history is it stated that a big-time drug operator could be prosecuted and convicted for

13

the separate predicate offenses as well as the CCE offense. The absence of such a statement, however, is not surprising; given the motivation behind the legislation and the temper of the debate, such a statement would merely have stated the obvious."). This intent holds true regardless of the order in which the offenses are prosecuted.

{13}     Additionally, it would be contrary to common sense and would undermine the purpose of racketeering legislation to force the State to choose between prosecuting the predicate offenses or pursuing a racketeering case. *Cf. id.* at 785 ("[I]t would be illogical for Congress to intend that a choice be made between the predicate offenses and the CCE offense in pursuing major drug dealers."). Given the way that the Racketeering Act is structured, a defendant could be prosecuted for a predicate offense long before a racketeering case materialized. However, if at the time that the predicate offense was committed the defendant was suspected to be involved in racketeering, the State would be forced to choose between pursuing an immediate conviction on the predicate offense or waiting in an attempt to catch the defendant at least one more time in order to pursue a racketeering case. *See id.*; *United States v. Arnoldt*, 947 F.2d 1120, 1127 (4th Cir. 1991) ("When grappling with a complex, multilayered-conduct statute such as RICO, the government must be given reasonable discretion in setting and pursuing its strategy. . . . Without ample discretion, the

14

government would be forced to either proceed against a defendant for violations that might later serve as predicate acts and foreclose a RICO prosecution in the future or allow predicate acts to go unpunished in anticipation that at some future time the RICO elements would coalesce."). "Such a situation [would be] absurd and clearly not what [was] intended." *Garrett*, 471 U.S. at 786; *see also Persico*, 620 F. Supp. at 842 (concluding that Congress intended to permit both successive prosecutions and cumulative punishments for RICO and predicate offenses, in part, because a "contrary interpretation . . . would put federal prosecutors in the untenable position . . . of having to choose between prosecuting either the predicate offenses or the RICO charge").

{14}     In light of the foregoing, and because we perceive no material difference between the purpose of RICO and that underlying the Racketeering Act, we conclude that the Legislature intended for predicate offenses to be separate from substantive racketeering offenses. *Accord Johnson*, 1986-NMCA-084, ¶ 34 ("New Mexico's Racketeering Act . . . evinces an implicit legislative intent that the crime of racketeering constitutes a separate and distinct offense apart from the enumerated predicate crimes.").

{15}     Turning to the second step under *Garrett*, we next examine whether

prosecution for both substantive racketeering offenses and predicate offenses, in separate proceedings, offends the right against double jeopardy. *See* 471 U.S. at 786. "The critical inquiry is whether a [racketeering] offense is considered the same offense as one or more of its predicate offenses within the meaning of the double jeopardy clause." *Grayson*, 795 F.2d at 283; *accord Garrett*, 471 U.S. at 786 ("The critical inquiry is whether a CCE offense is considered the 'same offense' as one or more of its predicate offenses within the meaning of the Double Jeopardy Clause.").

{16} Other courts that have analyzed this issue have noted, as the Court did in *Garrett*, 471 U.S. at 786, that a racketeering offense is not "in a literal sense" the same as one of its predicates. *See, e.g.*, *Grayson*, 795 F.2d at 283. Racketeering requires proof of predicate offenses as part of a pattern of racketeering in addition to the other elements of racketeering. *See* § 30-42-3(D); § 30-42-4(A)-(C). To properly examine the issue, however, "we must examine not only the statute which [the Legislature] has enacted, but also the charges which form the basis of the [State's] prosecution here." *Garrett*, 471 U.S. at 786. In the racketeering case, the jury was instructed that to find Defendant guilty of racketeering, there must be proof beyond a reasonable doubt that (1) an enterprise existed, (2) Defendant was associated with the enterprise, (3) Defendant participated either directly or indirectly in the conduct

16

of the affairs of the enterprise through a pattern of racketeering activities, and (4) Defendant engaged in at least two incidents of racketeering with the intent to commit a prohibited activity within five years of a prior incident of racketeering. The jury was also given separate instructions on arson, first-degree murder, and bribery of a public officer as possible incidents of racketeering. The jury convicted Defendant of racketeering, which means that it necessarily found, beyond a reasonable doubt, that Defendant committed at least two predicate offenses—although we do not know which two. The charges that Defendant presently faces include the same offenses used as predicates in the racketeering case—first-degree murder, arson, and bribery of a public officer—as well as conspiracy to commit first-degree murder and two counts of tampering with evidence.

{17} Defendant relies on the *Blockburger* test in arguing that some of the offenses in this case constitute the same offenses as those he was prosecuted for in the racketeering case. Specifically, Defendant asserts that "[t]here is no basis to [argue] that proof beyond a reasonable doubt of the elements of murder, arson, and bribery in the context of a racketeering case requires proof of a fact that would not be required in a trial for murder, arson, or bribery." In a case not involving racketeering charges, the failure to satisfy the *Blockburger* test would likely be helpful to

17

Defendant. *See generally Rodriguez*, 2005-NMSC-019, ¶ 7 (explaining that the meaning of "same offense," relative to the Fifth Amendment protection against being held twice in jeopardy for the same offense in the context of successive prosecutions, is determined by the *Blockburger* test). However, the *Blockburger* test was developed "in the context of multiple punishments imposed in a single prosecution" and "is not controlling when the legislative intent is clear." *Garrett*, 471 U.S. at 778-79. Because we have concluded that our Legislature intended predicate offenses and racketeering offenses to be separate, we are not swayed by Defendant's argument that this Court should apply the *Blockburger* test to conclude that they are the same offense for purposes of double jeopardy. *See Esposito*, 912 F.2d at 64 (concluding that *Blockburger* is inapplicable because the intent of Congress to make racketeering a separate offense from its predicate acts is clear).

{18}    We also point out that the prosecutions for racketeering in the earlier case and the charges in this case are aimed at deterring different kinds of conduct—the overall cumulative activity of racketeering, on the one hand, and murder, arson, and bribery, on the other. *Grayson*, 795 F.2d at 283; *see also Esposito*, 912 F.2d at 65 (analogizing to conspiracy cases and noting that a conspiracy offense "poses distinct dangers quite apart from those of the [completed] substantive offense" (internal quotation marks

18

and citation omitted)). In other words, although there may be significant overlap in the evidence presented against Defendant in both trials, Defendant is not being prosecuted in the murder case for the same conduct he was prosecuted for in the racketeering case. *See Esposito*, 912 F.2d at 67. This fact lends further support to our conclusion that double jeopardy protections do not present a bar to Defendant's prosecution for murder, arson, and bribery in this case.

{19} Although Defendant contends that other jurisdictions have concluded differently than we do here today, the cases that he cites to do not support his contention. Defendant relies on *Ex parte Chaddock*, 369 S.W.3d 880 (Tex. Crim. App. 2012), which implicates lesser-included-offense double jeopardy jurisprudence. It is well established amongst federal courts, however, that the lesser-included framework for analyzing double jeopardy issues does not apply to racketeering offenses. *See, e.g.*, *Garrett*, 471 U.S. at 787-90; *Esposito*, 912 F.2d at 65-67. Defendant also cites to *People v. Martin*, 721 N.W.2d 815 (Mich. Ct. App. 2006), but we fail to see how it supports Defendant's argument. If anything, *Martin* supports the conclusion we reach today. In *Martin*, the court specifically rejected strict application of the *Blockburger* test, looking instead to legislative intent to determine that keeping a house of prostitution was a "separate offense" from racketeering for purposes of

19

double jeopardy. *Martin*, 721 N.W.2 at 825-30. In short, neither *Chaddock* nor *Martin* alter our conclusion that predicate offenses are separate from the racketeering offenses they support.

**C.     Double Jeopardy Claim under the New Mexico Constitution**

{20}     Having concluded that there exists no double jeopardy bar under the federal constitution, we turn now to Defendant's argument based on New Mexico's double jeopardy provision. In support of his argument, Defendant points to the plain language of New Mexico's constitutional proscription against double jeopardy. The State, however, contends that Defendant failed to adequately preserve his state constitutional argument. Before we proceed, we first determine whether Defendant adequately preserved this issue.

{21}     As the State points out, *State v. Leyva*, 2011-NMSC-009, 149 N.M. 435, 250 P.3d 861, clarified the requirements for preserving a state constitutional argument under *State v. Gomez*, 1997-NMSC-006, 122 N.M. 777, 932 P.2d 1.

> Where a state constitutional provision has previously been interpreted more expansively than its federal counterpart, trial counsel must develop the necessary factual base and raise the applicable constitutional provision in trial court. Where the provision has never before been addressed under our interstitial analysis, trial counsel additionally must argue that the state constitutional provision should provide greater protection, and suggest reasons as to why, for example, "a flawed federal analysis, structural differences between state and federal

20

government, or distinctive state characteristics."

*Leyva*, 2011-NMSC-009, ¶ 49 (emphasis omitted) (quoting *Gomez*, 1997-NMSC-006, ¶ 19). Because this Court has previously interpreted New Mexico's double jeopardy provision to afford greater protection than the Fifth Amendment, *see Lynch*, 2003-NMSC-020, ¶ 13, Defendant had only to invoke New Mexico's double jeopardy provision in the district court and develop an adequate record to review the issue on appeal. *See Leyva*, 2011-NMSC-009, ¶ 49. Our review of the record below indicates that Defendant cited to both the Fifth Amendment to the United States Constitution and Article II, Section 15 of the New Mexico Constitution in his motion to dismiss on double jeopardy grounds, and he also developed the necessary factual base before the district court. Accordingly, Defendant's argument under the New Mexico Constitution was indeed preserved.

{22} Turning to the merits of Defendant's claim, the first step of the interstitial approach is to determine

> whether the right being asserted is protected under the federal
> constitution. If it is, then the state constitutional claim is not reached. If
> it is not, then the state constitution is examined. A state court adopting
> this approach may diverge from federal precedent for three reasons: a
> flawed federal analysis, structural differences between state and federal
> government, or distinctive state characteristics.

*Gomez*, 1997-NMSC-006, ¶ 19 (citations omitted). Having concluded that Defendant

is not protected by the Fifth Amendment from the subsequent prosecution in this case, we proceed to consider Defendant's claim under the New Mexico Constitution. *See id.*

{23}     Citing to cases in which this Court has diverged from the federal interpretation of double jeopardy guarantees, Defendant argues that "the intent of the drafters of the New Mexico [C]onstitution was to provide greater protections than" are afforded under the federal analysis. We agree with Defendant that, in certain contexts, defendants are afforded more protection under New Mexico's double jeopardy provision. *See Lynch*, 2003-NMSC-020, ¶¶ 11, 15-20 (holding that prosecution for first-degree murder following reversal of second-degree murder did not violate federal double jeopardy clause but did violate New Mexico's double jeopardy provision); *State v. Nunez*, 2000-NMSC-013, ¶¶ 16-18, 129 N.M. 63, 2 P.3d 264 (departing from federal precedent based on distinctive state characteristics and interpreting New Mexico's double jeopardy clause to prohibit separate criminal and civil forfeiture actions for the same offense); *State v. Breit*, 1996-NMSC-067, ¶¶ 32-36, 122 N.M. 655, 930 P.2d 792 (adopting a standard different from that employed by the federal courts to determine when retrial is barred in the context of improper official conduct based on the Court's conclusion that the New Mexico double

22

jeopardy provision affords more protection). However, Defendant offers no basis under the interstitial approach that would justify our departure from federal precedent in the context of racketeering cases, particularly when we have followed federal interpretations of RICO thus far. *See, e.g.*, *State v. Rivera*, 2009-NMCA-132, ¶¶ 11-12, 147 N.M. 406, 223 P.3d 951; *State v. Armijo*, 1997-NMCA-080, ¶¶ 13-15, 123 N.M. 690, 944 P.2d 919; *Hughes*, 1988-NMCA-108, ¶¶ 18-35; *State v. Wynne*, 1988-NMCA-106, ¶¶ 7-8, 108 N.M. 134, 767 P.2d 373; *Johnson*, 1986-NMCA-084, ¶¶ 23-34.

{24}	With respect to Defendant's argument based on the plain language of Article II, Section 15, we are similarly unpersuaded. In relevant part, Article II, Section 15 provides:

> No person . . . shall . . . be twice put in jeopardy for the same offense; and when the indictment, information or affidavit upon which any person is convicted charges different offenses or different degrees of the same offense and a new trial is granted the accused, he may not again be tried for an offense or degree of the offense greater than the one of which he was convicted.

Defendant contends that the plain language of the foregoing constitutional provision confers upon him a "right not to be retried in a subsequent trial for an offense greater than racketeering or conspiracy to commit racketeering." Defendant's argument ignores context—it fails to acknowledge that the language of the provision

specifically contemplates a situation in which a defendant is convicted of an offense, and thereafter, "a new trial is granted." *Id.* That is not what occurred here. This is not a situation where Defendant's convictions in a previous case were reversed, and we are now tasked with determining what options the State has in charging Defendant on retrial. Rather, the State now seeks to prosecute Defendant for the standalone criminal offenses which formed the basis of the racketeering conviction. This subsequent prosecution is separate and apart from the crime of racketeering and is not, as Defendant contends, "a new trial" for the same offense. Thus, contrary to Defendant's assertion, the plain language of Article II, Section 15 does not support a different result.

**D.     Joinder**

{25}     After reviewing Defendant's application for interlocutory appeal, this Court issued an order, sua sponte, requesting that the State file a response to Defendant's application addressing the potential implications of joinder under Rule 5-203(A) NMRA in this case. *See State v. Arrendondo*, 2012-NMSC-013, ¶ 20, 278 P.3d 517 ("Although as a general rule propositions of law not raised in the trial court should not be raised sua sponte by the appellate court, there are exceptions."). The State complied with the Court's request, addressing joinder in its response to Defendant's

24

application and in its answer brief. Defendant did not address joinder in his brief in chief and he did not file a reply brief. Because Defendant declined to pursue the issue as a potential basis for relief, we do not consider it here. *See State v. Johnson*, 2010-NMSC-016, ¶ 62, 148 N.M. 50, 229 P.3d 523 (concluding that the defendant abandoned issues "by failing to discuss them in his brief"); *State v. Ferguson*, 1990-NMCA-117, ¶ 24, 111 N.M. 191, 803 P.2d 676 ("Courts should not take it upon themselves to raise, argue, and decide legal issues overlooked by the lawyers.").

## IV.   CONCLUSION

{26}   The prohibition against double jeopardy, as guaranteed by both the United States and New Mexico constitutions, does not bar the State from prosecuting Defendant for the predicate offenses on which his racketeering convictions were based. The district court's order denying Defendant's motion to dismiss is therefore affirmed, and we remand this case for further proceedings consistent with this opinion.

{27}   **IT IS SO ORDERED.**

_____

**BARBARA J. VIGIL, Justice**

25

**WE CONCUR:**

_____
**JUDITH K. NAKAMURA, Chief Justice**


_____
**PETRA JIMENEZ MAES, Justice**


_____
**CHARLES W. DANIELS, Justice**


_____
**GARY L. CLINGMAN, Justice**

26