The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number:_____

Filing Date: **November 19, 2024**

**No. A-1-CA-40436**

**STATE OF NEW MEXICO,**

  Plaintiff-Appellee,

v.

**MAURY MONTEL ELLIOTT a/k/a**
**MAURY MONTEL ELLIOT,**

  Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**T. Glenn Ellington, District Court Judge**

Raúl Torrez, Attorney General
Lee Green, Assistant Solicitor General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**YOHALEM, Judge.**

{1}      Defendant Maury Montel Elliott appeals his convictions for contributing to the delinquency of a minor (CDM), contrary to NMSA 1978, Section 30-6-3 (1990); and criminal sexual penetration in the commission of a felony (CSP II-felony), contrary to NMSA 1978, Section 30-9-11(E)(5) (2009). Defendant's primary claim is that his right to be free from double jeopardy was violated by his convictions for both CDM and CSP II-felony, where CDM was also the predicate felony relied on to increase what was otherwise criminal sexual penetration of a minor (CSPM), a fourth degree felony, to CSP II-felony, a second degree felony. Defendant also challenges the sufficiency of the evidence to support his CDM and CSP II-felony convictions. Finally, Defendant contends that CDM is not an appropriate predicate felony to support a CSP II-felony conviction because it is too generic and nonspecific, or alternatively that, when CDM is the predicate felony, the use of force or coercion should be included in the jury instructions as an essential element of CSP II-felony. We conclude that Defendant's convictions for both CDM and CSP II-felony violate Defendant's right to be free from double jeopardy. We, therefore, vacate Defendant's conviction for CDM. We otherwise affirm.

## BACKGROUND

{2}     The State presented the following evidence at Defendant's trial. Defendant, who was twenty-three years old at the time, and his adult friend, met fifteen-year-old Victim, and Victim's fifteen-year-old friend, one evening at the plaza in Santa Fe, New Mexico. The two men approached the girls and offered them a drink of alcohol from a bottle concealed in a brown paper bag. The two men and the two girls chatted for about twenty minutes. When they left, Victim got both men's Instagram accounts. They planned to meet again at the plaza the following week.

{3}     When that meeting did not work out, Defendant and his friend contacted Victim through the friend's Instagram account. During the conversation, Victim mentioned that her mother would be out of town that night. Defendant, his friend, and Victim made plans to meet that evening.

{4}     Victim testified that, approximately ten minutes after her mother's departure for the night, she contacted one of the men and instructed him to pick her up at a school near her house. Victim snuck out and walked to the school. When Victim arrived at the school, the two men came up to her and handed her a glass container of alcohol. The three got into Defendant's friend's car.

{5}     Defendant's friend drove around the downtown area, and eventually stopped at a park where the three were alone. Victim and the two men got out of the car, sat on a curb, and began passing the bottle of alcohol around, each taking a drink.

Defendant's friend was smoking marijuana, and drank less frequently than Defendant and Victim, so Defendant and Victim passed the bottle back-and-forth, each drinking from it. When Victim mentioned not knowing how to smoke marijuana, Defendant inhaled smoke, created a tunnel with his hands (or with his hand and Victim's hand), connected one end of the tunnel to the end of his lips and the other to Victim's mouth, and blew the marijuana smoke directly into her mouth.

{6} Victim testified that, after a while, she could not hold her head up and had to put her hands behind her on the curb in order to support herself. After another few rounds of drinking, Victim testified she "couldn't even walk straight" and was "really out of it." When asked how much she drank, Victim answered that she drank "a lot for [her]" because she was "in and out [of consciousness] the whole night."

{7} Victim fell down and vomited and one or both men (Victim could not remember) helped Victim get up and get back into Defendant's friend's car. They drove to Defendant's apartment. When Victim tried to get out of the car, she struggled, lacked balance, and could not walk on her own. Defendant's friend helped Victim out of the car and helped her walk up the stairs to Defendant's apartment.

{8} Once in the apartment, Victim testified that she began to feel sick again. Defendant helped Victim to the restroom and then to his bed. Defendant then lay down on the opposite side of the bed, next to Victim. Defendant's friend fell asleep on the floor next to the bed.

{9} Victim testified that she vomited again before losing consciousness. She woke up to find Defendant taking off her shoes. She once again lost consciousness. The next time she woke up, she was on her stomach, and Defendant was touching her on the outside of her pants, rubbing and palming her buttocks, between her legs, and her vagina. She described being scared, and either losing consciousness or "spacing out" and not being aware of what was happening.

{10} The next time Victim woke up, she was still on her stomach and Defendant was sliding her pants down. Defendant attempted to penetrate her with his penis, but ended up poking the area between her anus and vagina instead. She once again lost consciousness. The next time that she woke up, she was on her side, and Defendant was behind her with his penis inside her vagina. After some time, Defendant said he was going to ejaculate. Victim testified that she "snapped . . . back into reality" and pushed him away. She turned around and saw Defendant's friend asleep on the floor beside the bed. Victim then remembered falling back asleep.

{11} On the morning of the next day, Defendant woke Victim up and told her that his friend was going to take her back home. She testified that, during the car ride, she felt dirty and disgusted with herself. Victim directed Defendant's friend to drop her off a block from her house, and she walked home.

{12} A few days later, Victim reported to a trusted school official that something had happened to her. The school official contacted Victim's mother and notified law

enforcement. Victim told her mother and law enforcement what occurred. Later that month, law enforcement interviewed Defendant. Defendant confirmed that he had sexual intercourse with Victim, but claimed that the encounter was consensual. The State introduced a recording of Defendant's interview. Defendant did not testify at trial.

{13}     Defendant was convicted by the jury of CDM. The jury completed a special verdict form unanimously finding CDM based on Defendant helping Victim drink alcohol and use drugs. The jury also found Defendant guilty of CSP II-felony in the commission of CDM. This appeal followed.

**DISCUSSION**

{14}     We take up Defendant's three claims of error in turn. First, we address the sufficiency of the evidence, and conclude that the jury's guilty verdicts for CDM and CSP II-felony are supported by substantial evidence. Second, we turn to Defendant's double jeopardy challenge and conclude that his convictions for both CSP II-felony and CDM violate Defendant's right to be free from double jeopardy and accordingly vacate his CDM conviction. Third, we address Defendant's claim that CDM is not an appropriate predicate felony to elevate CSP II-felony because it is too generic and nonspecific or, alternatively, that the jury instruction for CSP II-felony in the commission of CDM was flawed because the jury was not instructed on what Defendant claims is an additional element: the use of force or coercion.

5

Rejecting this argument as inconsistent with legislative intent, we affirm the CSP II-felony conviction.

**I.    Sufficient Evidence Supports Defendant's Convictions for CDM and CSP II-Felony**

{15}    Defendant challenges the sufficiency of the evidence supporting his convictions for CDM and CSP II-felony. Defendant contends that the evidence presented at trial was insufficient to establish two elements of CDM: that Defendant actively helped Victim drink alcohol and use drugs, and that Defendant's conduct "caused or encouraged [Victim] to conduct herself in a manner injurious to her morals, health, or welfare." Defendant also challenges the sufficiency of the evidence of CSP II-felony, arguing that the evidence fails to establish that the sexual intercourse was perpetrated "during the commission of [CDM]," or that "[t]he commission of [CDM] assisted [D]efendant in causing [Victim] to engage in sexual intercourse." *See* UJI 14-954 NMRA (element 5).

**A.    Standard of Review**

{16}    "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Guerra*, 2012-NMSC-027, ¶ 10, 284 P.3d 1076 (internal quotation marks and citation omitted). "The reviewing court views the evidence in the light most favorable to the guilty verdict," *id.* (text only) (citation omitted), "resolv[ing] all

6

disputed facts in favor of the [s]tate, indulg[ing] all reasonable inferences in support of the verdict, and disregard[ing] all evidence and inferences to the contrary," *State v. Largo*, 2012-NMSC-015, ¶ 30, 278 P.3d 532 (internal quotation marks and citation omitted). "We do not reweigh the evidence or substitute our judgment for that of the fact[-]finder as long as there is sufficient evidence to support the verdict." *State v. Gipson*, 2009-NMCA-053, ¶ 4, 146 N.M. 202, 207 P.3d 1179. We also do not "substitute our judgment for that of the [jury] concerning the credibility of witnesses or the weight to be given their testimony." *State v. Nichols*, 2006-NMCA-017, ¶ 9, 139 N.M. 72, 128 P.3d 500 (internal quotation marks and citation omitted). "The jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 (text only) (citation omitted).

**B.    The Evidence Supporting the Elements of CDM**

{17}    We first address Defendant's contention that there was insufficient evidence to convict him of CDM. The CDM instruction is written in the alternative, giving the jury the choice of finding that Defendant: "helped [Victim] sneak out of her home, and/or drink alcohol and/or use drugs." *See* UJI 14-601 NMRA (element 1). A special verdict form accompanied the instruction requiring the jury to report to the court "which act or acts [the jurors] unanimously agreed that . . . Defendant committed." In the special verdict form, the jury unanimously found that Defendant

7

helped Victim drink alcohol and use drugs. The jury was also instructed that they must find that Defendant's conduct "caused or encouraged [Victim] to conduct herself in a manner injurious to her morals, health, or welfare." *See* UJI 14-601 (element 2).

{18} As pertinent to the jury's finding that Defendant helped Victim drink alcohol, Defendant contends that the State failed to prove that Defendant "did anything other than drink [Defendant's friend's] alcohol with her" and that "more than mere presence may be required" for conduct to amount to CDM. Defendant concedes that evidence that a defendant either provided alcohol to a minor or encouraged a minor to drink alcohol would be sufficient for a CDM conviction. Because our review of the evidence presented at trial shows that the evidence is sufficient to find that Defendant provided alcohol to Victim and encouraged her to drink alcohol, we do not address Defendant's argument that the mere presence of an adult where minors are drinking is insufficient to support a finding of CDM.

{19} Victim testified that Defendant and his friend handed her a bottle of fruit-flavored alcohol when they first met up with her at the school near her house. After a drive to a local park, Defendant, his friend, and Victim got out of the car in an empty park, and sat down together on a curb. Defendant (and initially his friend) repeatedly took drinks of alcohol from the bottle, and then passed it to Victim for her to take a turn drinking from the bottle. When Defendant's friend stopped

8

drinking, Defendant continued to drink and to pass the bottle to Victim. Victim described continuing to drink when the bottle was passed to her until she was "past faded," and could not walk on her own. Victim also testified that, prior to her interactions with Defendant and his friend, she had never had large amounts of alcohol and did not know how the amount she drank would affect her, so she continued drinking each time the bottle was passed to her.

{20} This evidence is sufficient to support the jury's verdict beyond a reasonable doubt that Defendant both participated in handing the alcohol to Victim and encouraged her to continue drinking until she was so drunk she could not stand up and was in and out of consciousness at the time of the sexual intercourse. *See State v. Cuevas*, 1980-NMSC-101, ¶ 4, 94 N.M. 792, 617 P.2d 1307 (even though alcohol was bought and served by someone else, demonstrating how to drink to minors and thereby encouraging drinking was sufficient to convict the defendant of CDM), *overruled in part on other grounds by State v. Pitts*, 1986-NMSC-011, ¶ 9, 103 N.M. 778, 714 P.2d 582.

{21} We see no error in the jury's finding that Defendant's actions "helped" Victim drink alcohol, and that his actions "caused or encouraged [Victim] to conduct herself in a manner injurious to her morals, health, or welfare," including submitting to sexual intercourse. *See* UJI 14-601 (element 2).

9

**{22}** The evidence of Defendant helping Victim to use drugs, which Defendant separately challenges, also establishes that Defendant was more than a passive bystander. Victim testified that, when she told Defendant she did not know how to smoke marijuana from the pipe being used by Defendant and his friend, Defendant inhaled marijuana into his mouth, created a tunnel with his hands (or with his hand and Victim's hand), and blew the marijuana smoke through the tunnel directly into her mouth. Defendant relies on literature about marijuana that claims that it is difficult to inhale sufficient marijuana from ambient smoke to become intoxicated. We note that Defendant presented no expert testimony to establish this, *see State v. Hunter*, 2001-NMCA-078, ¶ 18, 131 N.M. 76, 33 P.3d 296 ("Matters not of record present no issue for review."), and that, in any event, blowing smoke directly into Victim's mouth is not the same as merely inhaling ambient smoke. The jury was free to use their knowledge and common sense to find that blowing marijuana smoke directly into Victim's mouth was sufficient to establish that Defendant "helped [Victim] . . . use drugs," *see* UJI 14-601 (element 1), and that Victim's drug use contributed to her intoxication and, like her alcohol use, caused her "to conduct herself in a manner injurious to her morals, health or welfare." *See* UJI 14-601 (element 2). Accordingly, sufficient evidence supports Defendant's conviction for CDM.

**C.** **The Evidence Supporting the Jury's Findings That CSP II-Felony Occurred "During the Commission of CDM" and That There Was a Causal Connection**

{23} Defendant next contends that the evidence presented by the State was insufficient to convict him of CSP II-felony as charged because the alcohol and marijuana were not "consumed sufficiently close in time" to establish that the criminal sexual penetration "occurred in the course of another felony." The jury was instructed, in relevant part, that to convict Defendant of CSP II-felony it had to find by proof beyond a reasonable doubt that Defendant "committed the act [of sexual intercourse] during the commission of [CDM]" and "[t]he commission of [CDM] assisted [D]efendant in causing [Victim] to engage in sexual intercourse." *See* UJI 14-954 (elements 3, 5).

{24} Victim testified at trial that after the rounds of alcohol she drank in the park and the marijuana she inhaled, she could no longer walk straight and was "past faded." Defendant's friend testified that when they arrived at Defendant's apartment complex, Victim struggled to exit the vehicle, lacked balance, and could not walk. Defendant's friend, therefore, helped Victim walk up some stairs to Defendant's apartment. Victim testified that she was in and out of consciousness due to intoxication during the events leading up to, during, and following the sexual intercourse, and that she was not able to protest or stop Defendant. As discussed in our review of Defendant's CDM conviction, from this evidence, the jury could

reasonably infer that Defendant's conduct in helping Victim drink alcohol and use marijuana contributed to Victim "conduct[ing] herself in a manner injurious to her morals, health, or welfare," in that she submitted to unlawful sexual intercourse later that night.

{25}     This same evidence is sufficient to support the jury's finding that "[t]he commission of [CDM] assisted [D]efendant in causing [Victim] to engage in sexual intercourse." *See* UJI 14-954 (element 5); *see also State v. Stevens*, 2014-NMSC-011, ¶ 39, 323 P.3d 901 ("[H]old[ing] that when a CSP II[-felony] charge is based on the commission of a felony, it must be a felony that is committed against the victim of, and that *assists in the accomplishment of*, sexual penetration perpetrated by force or coercion or against a victim who, by age or other statutory factor, gave no lawful consent." (emphasis added)). There is a causal nexus between Defendant's conduct in helping Victim to become intoxicated and Defendant's conduct in sexually assaulting Victim. The evidence shows that Defendant's conduct in helping Victim to become intoxicated resulted in Victim being only partially conscious and unable to protest or defend herself from Defendant's unwanted sexual intercourse. In light of this, Defendant's actions in contributing to Victim's intoxication facilitated the unlawful sexual intercourse, providing the nexus of causation between the CDM and the criminal sexual penetration. *See State v. Smith*, 2001-NMSC-004, ¶¶ 5, 13-15, 130 N.M. 117, 19 P.3d 254 (concluding that there was a sufficient causal

connection to find that the victim's death occurred "during the commission of false imprisonment" when the false imprisonment was accomplished by forcing the victim into a car, and the victim's subsequent murder occurred in an isolated location after driving the victim in the car); *cf. State v. Montoya*, 2003-NMSC-004, ¶¶ 27-30, 133 N.M. 84, 61 P.3d 793 (concluding there was sufficient evidence to support a felony murder conviction in the commission of kidnapping where the defendant kidnapped a gunshot wound victim, drove him away from the hospital, and left him to die).

{26} Accordingly, sufficient evidence supports that the CSP II-felony in this case occurred in the commission of CDM, and "[t]he commission of [CDM] assisted [D]efendant in causing [Victim] to engage in sexual intercourse." *See* UJI 14-954 (element 5).

## II. Defendant's Right to Be Free From Double Jeopardy Was Violated by His Convictions for Both CSP II-Felony and CDM

{27} We turn next to Defendant's double jeopardy challenge. "We generally apply a de novo standard of review to the constitutional question of whether there has been a double jeopardy violation." *State v. Cummings*, 2018-NMCA-055, ¶ 6, 425 P.3d 745. To the extent we are called upon to interpret either a constitutional provision or a statute, these are questions of law, which we also review de novo. *New Mexicans for Free Enter. v. City of Santa Fe*, 2006-NMCA-007, ¶ 11, 138 N.M. 785, 126 P.3d 1149.

13

{28}     The Double Jeopardy Clause of the Fifth Amendment of the United States Constitution, made applicable to the states by the Fourteenth Amendment, protects against "multiple punishments for the same offense."[1] *State v. Sena*, 2020-NMSC-011, ¶ 44, 470 P.3d 227 (internal quotation marks and citation omitted). "The pivotal question in multiple punishment cases is whether the defendant is being punished twice for the same offense." *Swafford v. State*, 1991-NMSC-043, ¶ 8, 112 N.M. 3, 810 P.2d 1223 (emphasis omitted). Multiple punishment challenges arise in both unit of prosecution claims, "in which an individual is convicted of multiple violations of the same criminal statute," and double description claims, "in which a single act results in multiple charges under different criminal statutes." *State v. Bernal*, 2006-NMSC-050, ¶ 7, 140 N.M. 644, 146 P.3d 289.

{29}     To analyze a double description challenge, such as Defendant's, we generally employ the two-part test, set out in *Swafford*, in which we examine: (1) whether the conduct is unitary, and, if so, (2) whether the Legislature intended to punish the offenses separately. *See* 1991-NMSC-043, ¶¶ 9, 25. "Only if the first part of the test is answered in the affirmative, and the second in the negative, will the double jeopardy clause prohibit multiple punishment in the same trial." *State v. Silvas*,

---

[1]Defendant does not argue that the New Mexico Constitution affords him greater rights than the Fifth Amendment. Therefore, we review Defendant's claim only pursuant to the federal right. *See State v. Sena*, 2020-NMSC-011, ¶ 44, 470 P.3d 227.

2015-NMSC-006, ¶ 9, 343 P.3d 616 (internal quotation marks and citation omitted). The second *Swafford* prong on legislative intent may take the form of a strict-elements test, as set forth in *Blockburger v. United States*, 284 U.S. 299, 304 (1932) (examining the criminal statutes to determine whether each offense requires proof of an element that the other does not; and if not, concluding that the elements of one offense subsume the other and convictions cannot be had for both), or a modified form of the *Blockburger* test, as adopted by our Supreme Court in *State v. Gutierrez*, 2011-NMSC-024, ¶¶ 48, 58-59, 150 N.M. 232, 258 P.3d 1024 (examining, as in *Blockburger*, whether each offense requires proof of an element the other does not, but applying the test to the facts and the theory relied on by the state to convict).

{30} Defendant and the State both urge this Court to turn away to some extent from the *Swafford*/modified *Blockburger* test—each claiming that a compound crime like CSP II-felony, that requires a finding that the defendant committed another predicate felony during the commission of a greater felony, requires a different analysis. Defendant's argument relies on *State v. Frazier*, 2007-NMSC-032, 142 N.M. 120, 164 P.3d 1, a felony murder case holding that the *Swafford* unitary conduct prong of the double jeopardy analysis is necessarily resolved by the jury's finding that the killing occurred "in the commission of" the predicate crime. *See Frazier*, 2007-NMSC-032, ¶¶ 1, 21-26. Because CSP II-felony, at issue in this case, includes similar statutory language as felony murder, at issue in *Frazier*, requiring the jury to

find that the greater offense occurred "in the commission" of the predicate offense, *compare* NMSA 1978, § 30-2-1(A)(2) (1994), *with* § 30-9-11(E)(5), Defendant argues that this Court should import the *Frazier* analysis here.

{31} The State argues that the approach taken in *State v. Loza*, 2018-NMSC-034, 426 P.3d 34, should control, rather than the modified *Blockburger* analysis of legislative intent. *Loza* looked to the pattern of predicate offenses required to convict a defendant of racketeering under New Mexico's Racketeering Act, NMSA 1978, §§ 30-42-1 to -6 (1980, as amended through 2024), and concluded that no double jeopardy violation occurred when a defendant is convicted both of the predicate crimes and of substantive racketeering offenses. *See Loza*, 2018-NMSC-034, ¶ 14.

{32} We first apply the *Swafford* unitary conduct test, and then address Defendant's alternative approach to unitary conduct based on *Frazier*. We then turn to the modified *Blockburger* analysis, and, following that analysis, we address the alternative approach to legislative intent argued by the State based on *Loza*.

**A.    The Conduct Underlying Defendant's Convictions for CDM and CSP II-Felony Is Unitary**

{33} Defendant argues that he was convicted of both CDM and CSP II-felony, based on unitary conduct. A defendant's conduct is unitary "if the acts are not separated by sufficient indicia of distinctness." *State v. Porter*, 2020-NMSC-020, ¶ 12, 476 P.3d 1201 (internal quotation marks and citation omitted). In *State v. Phillips*, 2024-NMSC-009, ¶ 38, 548 P.3d 51, our Supreme Court applied the factors

16

from *State v. Herron*, 1991-NMSC-012, ¶ 15, 111 N.M. 357, 805 P.2d 624—the principal case examining whether distinct acts support multiple counts in a unit of prosecution double jeopardy challenge—to guide the determination of whether conduct is unitary in a double description case. *See Phillips*, 2024-NMSC-009, ¶ 12 (listing the *Herron* factors as "(1) temporal proximity of the acts, (2) location of the victim during each act, (3) the existence of intervening events, (4) the sequencing of the acts, (5) the defendant's intent as evidenced by his conduct and utterances, and (6) the number of victims"). In determining whether there are sufficient indicia of distinctness, "we look to the elements of the charged offenses, the facts presented at trial, and the instruction given to the jury." *State v. Lorenzo*, 2024-NMSC-003, ¶ 6, 545 P.3d 1156 (text only) (citation omitted). "The proper analytical framework is whether the facts presented at trial establish that the jury reasonably could have inferred independent factual bases for the charged offenses." *State v. Franco*, 2005-NMSC-013, ¶ 7, 137 N.M. 447, 112 P.3d 1104 (internal quotation marks and citation omitted).

{34}     As already discussed, the jury convicted Defendant of CDM and indicated on the special verdict form that they unanimously agreed that Defendant had helped Victim drink alcohol and use drugs. We next look at whether Defendant's conviction of CSP II-felony was based on conduct unitary with the conduct found by the jury to satisfy the elements of CDM. Looking first at the indictment and the jury

instructions on the crime of CSP II-felony, we note that both specifically identified the predicate felony as CDM. The jury was instructed that a conviction of CSP II-felony required a finding that Defendant had committed CDM, and, in addition, required the jury to find that Defendant "caused [Victim] to engage in sexual intercourse . . . during the commission of [CDM]." *See* UJI 14-954 (elements 1, 3). Although the jury instructions are not explicit in directing the jury to rely on the same conduct it relied on to convict Defendant of CDM, we conclude that this is the only reasonable way to view the instructions and the verdict. *See Franco*, 2005-NMSC-013, ¶ 8 (determining whether the jury instructions limited the scope of the evidence the jury could consider). The use notes to UJI 14-954, the uniform jury instruction for CSP II-felony, require the district court to instruct the jury on the essential elements of the predicate felony "unless they are covered in an essential element instruction for the substantive offense." *See* UJI 14-954, use note 7. The district court provided no separate CDM elements instruction; it relied on the instruction for the substantive offense of CDM, and the accompanying special verdict form. The jury therefore found that Defendant's conduct in helping Victim drink alcohol and use drugs was the basis for its finding that Defendant committed CDM both as an independent substantive offense, and as the predicate offense for its conviction for CSP II-felony. *See Silvas*, 2015-NMSC-006, ¶¶ 18-19 (confirming that the conduct was unitary based on the jury instructions, in which the state

18

"directed the jury to the same act for both crimes . . . as the basis to convict for both crimes"). The jury's finding (which, as discussed, is supported by sufficient evidence) that Defendant "caused [Victim] to engage in sexual intercourse . . . during the commission of [CDM]," *see* UJI 14-954 (element 3), confirms that "there are no independent factual bases to support each offense." *See State v. Serrato*, 2021-NMCA-027, ¶ 26, 493 P.3d 383; *see also id.* ¶ 27 (concluding that unitary conduct existed where a sexual offense had to be proved to convict the defendant of first-degree kidnapping and there was proof of only one sexual offense at trial such that the "charges were based on the *same* conduct"). The jury plainly found that Defendant's conduct in helping Victim to become intoxicated contributed to Victim "conduct[ing] herself in a manner injurious to her morals, health, or welfare," in that she submitted to unlawful sexual intercourse while still intoxicated later that night. Therefore, the conduct relied on to convict of both CDM and CSP II-felony was unitary, meeting the first *Swafford* prong.

{35}    In light of the foregoing, we need not consider Defendant's argument that *Frazier* should be imported into the CSP II-felony context. After engaging in an exhaustive discussion and analysis of the felony murder statute and case law construing that statute, 2007-NMSC-032, ¶¶ 6-11, 21-26, 31-35, *Frazier* held that a jury finding that a killing occurred "in the commission" of the predicate felony is a determination as a matter of law that the conduct is unitary, and that it is improper

for the courts to separately engage in a unitary conduct analysis, *id.* ¶¶ 1, 20-26.[2] *Frazier* thus concluded that felony "murder and the predicate felony are actually greater and lesser included offenses in every case," and "that the predicate felony is always subsumed into a felony murder conviction, and no defendant can be convicted of both." *Id.* ¶ 1. Although there may be good reason to extend *Frazier* beyond the felony murder to the CSP II-felony context, we need not resolve this question today.

**B.      The Legislature Did Not Intend Multiple Punishments for CSP II-Felony and CDM Under the State's Theory of the Case**

**1.      The Modified *Blockburger* Analysis**

{36}     Having determined that the conduct relied on to convict Defendant of the two offenses was unitary, we proceed to the second *Swafford* prong: "whether the Legislature intended to create separately punishable offenses." *State v. Reed*, 2022-NMCA-025, ¶ 8, 510 P.3d 1261 (text only) (citation omitted). We look first to the language of the statutes themselves to determine whether the Legislature has expressly authorized multiple punishments. *See State v. Begaye*, 2023-NMSC-015, ¶ 21, 533 P.3d 1057. Only if the plain language of one or both statutes expressly

---

[2]*Frazier* identified an exception to this rule—i.e., where "the facts support multiple charges of a particular felony [that] can be sustained under a unit of prosecution analysis, then the [s]tate is free to use one of those charges as the predicate felony and obtain separate convictions for the other charges." *Id.* ¶ 27. As discussed, Defendant was convicted of a single count of CDM, so a unit of prosecution analysis would not be appropriate here.

authorizes multiple punishments is this step dispositive as to legislative intent. *See id.* Here, neither the CSP II-felony statute, *see* § 30-9-11(E)(5), nor the CDM statute, *see* § 30-6-3, expressly authorize multiple punishments. We thus proceed with the *Blockburger* analysis "to determine whether each provision requires proof of a fact that the other does not." *State v. Branch*, 2018-NMCA-031, ¶ 24, 417 P.3d 1141. If all elements of one statute are "subsumed within the other, then the analysis ends and the statutes are considered the same for double jeopardy purposes." *Silvas*, 2015-NMSC-006, ¶ 12.

{37}     We must first determine whether the modified *Blockburger* test or the strict-elements *Blockburger* test applies. *See Begaye*, 2023-NMSC-015, ¶ 23 (providing that the reviewing court must "examine the statutes at issue to discern whether the modified or strict-elements *Blockburger* test applies," and "should then apply either the modified or the strict-elements test—but not both"). Addressing the CSP II-felony statute first, we have little difficulty concluding that this statute requires the application of the modified *Blockburger* test. It adopts multiple alternatives, providing that CSP II-felony may be perpetrated in the commission of "any other felony," § 30-9-11(E)(5). *See, e.g., State v. Simmons*, 2018-NMCA-015, ¶¶ 30-32, 409 P.3d 1030 (applying the modified *Blockburger* test to CSP II-felony). The CDM statute also has been held by this Court to be "both vague and unspecific in that it criminalizes '*any* act' or the omission of '*any* duty' when that act or omission results

in a child's delinquency." *State v. Luna*, 2018-NMCA-025, ¶ 14, 458 P.3d 457 (citation omitted). Accordingly, we must apply the modified *Blockburger* test.

{38} As discussed previously, the theory for the predicate CDM felony in this case argued by the State and relied on by the jury is stated in the special verdict form, supplemented by the additional findings required by the jury instructions on CDM. The jury unanimously found that Defendant committed CDM by helping Victim drink alcohol and use drugs, and that Defendant's conduct caused Victim, a minor, to become so intoxicated that she lost control, causing her to "conduct herself in a manner injurious to her morals, health, [or] welfare." *See* UJI 14-601 (element 2).

{39} As previously discussed, the jury was instructed to rely on CDM as the predicate felony for CSP II-felony. Although the jury was required to make additional findings about the connections between the CDM and the criminal sexual intercourse to convict of CSP II-felony, no additional findings were required to convict of CDM. Accordingly, CDM is entirely subsumed within the offense of CSP II-felony under the State's theory of the case. *See Simmons*, 2018-NMCA-015, ¶¶ 31-32 (determining that when "the CSP II-felony instruction required the jury to find that the defendant caused the victim to engage in sexual intercourse during the commission of [the predicate offense]," the predicate offense is "subsumed within the CSP II-felony conviction" (alterations, internal quotation marks, and citation omitted)); *see also State v. Montoya*, 2011-NMCA-074, ¶ 42, 150 N.M. 415, 259

22

P.3d 820 ("Because we have already determined that the conduct in this case is unitary, the 'during the commission of a felony' element of CSP II[-felony] requires proof of all of the elements of [the predicate offense]. Thus, the [predicate] offense . . . is subsumed in CSP II[-felony], and convictions of both offenses violated [the d]efendant's right to be free from double jeopardy."). Defendant's right to be free from double jeopardy was, therefore, violated and "the inquiry is over." *See Begaye*, 2023-NMSC-015, ¶ 35 (internal quotation marks and citation omitted).

**2.      The State's Approach: by Analogy to Racketeering and to a Continuing Criminal Enterprise (CCE)**

{40}      The State asks us to reject the modified *Blockburger* test and apply a different double jeopardy analysis for determining legislative intent to allow multiple punishments in this case. The State argues that when the modified *Blockburger* test is applied to a compound crime, which requires that the greater crime—here CSP II-felony—occur "in the commission of" a predicate felony—here CDM—the defendant's conduct always will be subsumed in the greater offense, failing the modified *Blockburger* test. The State asserts that the Legislature did not intend this result. It asks this Court to reject the modified *Blockburger* test and instead apply by analogy our Supreme Court's construction of the Racketeering Act in *Loza*, which allows punishment for both the predicate crimes and for the crime of racketeering based on legislative intent. *See* 2018-NMSC-034, ¶ 14. The State also cites the analysis of the United States Supreme Court in *Garrett v. United States*, 471 U.S.

23

773 (1985), a case relied upon by our Supreme Court in *Loza*. *Garrett* construed the federal Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 848, as defining separate offenses for double jeopardy purposes, based on congressional intent to punish both the predicate drug offenses and the CCE made criminal by that Act. *See Loza*, 2018-NMSC-034, ¶¶ 8-10.

{41}     *Loza* and *Garrett* address the double jeopardy implications of what both the United States Supreme Court and our New Mexico Supreme Court describe as multilayered, complex-compound criminal statutes. *See Loza*, 2018-NMSC-034, ¶ 7 (characterizing the Racketeering Act as a "complex statutory scheme[] involving multilayered conduct" (internal quotation marks omitted)). Both *Loza* and *Garrett* conclude that these statutes were enacted to make engaging in a racketeering enterprise or in a drug-related CCE a crime. *See Loza*, 2018-NMSC-034, ¶ 17 (racketeering); *see also Garrett*, 471 U.S. at 795 (CCE). Racketeering and CCE include, as one element among many, the requirement that the defendant have committed multiple predicate felonies, creating a pattern of criminal behavior over an extended period of time. *Loza*, 2018-NMSC-034, ¶ 16. We do not agree that CSP II-felony, which increases the punishment for criminal sexual penetration when that felony occurs during the commission of another felony, is analogous to the pattern of criminal activity requirement for conviction of racketeering or engaging in a drug-related CCE.

24

{42}     *Loza* turns on what our Supreme Court finds to be the plain expression of legislative intent in the Racketeering Act: to make engaging in racketeering a separate offense from the predicate offenses that establish a pattern of criminal conduct, and to allow additional punishment for engaging in a criminal racketeering enterprise, even though the defendant may have been convicted and punished for predicate crimes in the past, or might be convicted of such crimes in the future. *See Loza*, 2018-NMSC-034, ¶¶ 13-14. Recognizing that the *Blockburger* test "was developed in the context of multiple punishments imposed in a single prosecution, and is not controlling when the legislative intent is clear," 2018-NMSC-034, ¶ 17 (internal quotation marks and citation omitted), our Supreme Court relied on the plain intent of the Legislature to punish racketeering, "in addition to, not in lieu of, any predicate offenses." *Id.* ¶ 9 (citing *Garrett*, 471 U.S. at 779-86). The Supreme Court did not apply the modified *Blockburger* test to determine whether one crime was subsumed within the other.

{43}     *Loza* specifically distinguishes simple compound offenses, like CSP II-felony—where our Legislature has provided that the greater felony must occur "in the commission" of the predicate felony, and where the predicate felony is prosecuted at the same time as the greater felony—from statutes like the Racketeering Act—which punish "complex, multilayered-conduct," *id.* ¶ 13, that occurs over long periods of time, and is often prosecuted separately from the

25

racketeering offense. *See id.* ¶ 8 ("In *Garrett*, the [United States] Supreme Court cautioned against ready transposition of double jeopardy principles articulated in cases involving a single course of conduct to the 'multilayered conduct' that comprises criminal activity in complex statutory schemes." (alteration, internal quotation marks, and citation omitted)). For these reasons, we are not persuaded that the exception to the modified *Blockburger* test adopted by *Loza* and *Garrett* applies to this case.

### III. Our Legislature Does Not Require Proof of Force or Coercion When CDM Is the Predicate Felony Elevating CSPM to a Second Degree Felony

**{44}** Finally, Defendant argues that CDM is too expansive to be an appropriate predicate felony to elevate CSPM to a second degree felony, or alternatively that there must be a jury finding that force or coercion was involved in the CSP II-felony in order to sustain the conviction based on CDM as the predicate felony. We do not agree.

**{45}** Our Supreme Court in *Stevens*, 2014-NMSC-011, construed the CSP II-felony statute in a case where the predicate offense was CDM. The Court held that the statutory requirement of CSP II-felony that the criminal sexual penetration be "unlawful" expresses the intent of our Legislature to punish the invasion of sexual privacy, whether that be accomplished by force or by another sort of undue advantage, such as the minority age of the victim. *See id.* ¶¶ 29, 39. In other words, there is no need for a predicate offense to involve force or coercion, as long as the

26

victim of CSP II-felony is statutorily unable to consent to sexual intercourse. *See id.* ¶ 39 ("[W]hen a CSP II[-felony] charge is based on the commission of a felony, it must be a felony that is committed against the victim of, and that assists in the accomplishment of, sexual penetration perpetrated by force or coercion *or* against a victim who, by age or other statutory factor, gave no lawful consent." (emphasis added)). *Stevens* found the requirement that the sexual intercourse be "unlawful," together with the requirements of a direct relationship both in time and in causation between the sexual intercourse and the CDM predicate felony, sufficient to avoid the CSP II-felony statute being inappropriately applied to petty conduct, *id.*, as Defendant speculates could occur if proof of the use of force or coercion is not required. This Court's role is to interpret legislative policy, not to add words that are not there to a statute that makes sense as written. *See Aeda v. Aeda*, 2013-NMCA-095, ¶ 11, 310 P.3d 646 ("Unless a statute violates the Constitution, we will not question the wisdom, policy, or justness of legislation enacted by our Legislature." (text only) (citation omitted)). We accordingly reject Defendant's contentions that CDM is not an appropriate predicate felony for CSP II-felony and that the use of force or coercion must be included in the jury instruction as an essential element of CSP II-felony when CDM is the predicate felony.

**CONCLUSION**

{46}    Because Defendant's convictions for both CDM and CSP II-felony (in the commission of CDM) violates Defendant's right to be free of double jeopardy, we reverse Defendant's CDM conviction, the lesser offense, and remand this case to the district court to vacate the CDM conviction and resentence Defendant. *See State v. Montoya*, 2013-NMSC-020, ¶ 55, 306 P.3d 426 (explaining that "where one of two otherwise valid convictions must be vacated to avoid violation of double jeopardy protections, we must vacate the conviction carrying the shorter sentence."). We otherwise affirm.

{47}    **IT IS SO ORDERED.**


_____
**JANE B. YOHALEM, Judge**

**WE CONCUR:**


_____
**JENNIFER L. ATTREP, Chief Judge**


_____
**GERALD E. BACA, Judge**

28